UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| ERIN K. DANNA,<br>　　Plaintiff,<br><br>　　v.<br><br>RHODE ISLAND SCHOOL OF<br>DESIGN,<br>　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. No. 21-188-JJM-PAS

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief United States District Judge.

Erin K. Danna, a former one-year contractual employee of the Rhode Island School of Design's ("RISD") European Honors Program as a Post Baccalaureate Fellow, sued RISD for gender discrimination and retaliation. RISD has moved to dismiss, asserting that Ms. Danna has failed to adequately plead any plausible legal claims. ECF No. 21. Ms. Danna objects claiming that her Second Amended Complaint ("Complaint") (ECF No. 20) adequately pleads plausible legal claims for relief. ECF No. 28. After a thorough review of the Complaint, the briefs, the law, and arguments of counsel, the Court GRANTS IN PART AND DENIES IN PART RISD's Motion to Dismiss. ECF No. 21.

## I.    BACKGROUND

On April 8, 2019, Ms. Danna entered a one-year contract with RISD to become a Post Baccalaureate Fellow in the school's European Honors Program ("EHP") in Rome, Italy. ECF No. 20 at ¶15. The contract required Ms. Danna to live in the

"Palazetto Cenci August 20, 2019 through June 30, 2020." *Id.* at ¶ 16.  The contract required Ms. Danna to "facilita[te] student life in the Cenci and organiz[e] student activities," among similar duties.  ECF No. 20-1. EHP Director Ezio Genovesi was to supervise her fellowship.   In exchange for these responsibilities, RISD provided a living stipend, airfare to Rome, and a "single room in the Cenci and a studio space." *Id.*

After Ms. Danna signed the contract with RISD, she informed them that she had a small child and husband.  ECF No. 20 at ¶ 19.  She alleges that RISD "attempted to dissuade [Ms. Danna] from taking the position, by treating her in a hostile manner." *Id.* at ¶ 20.  Ms. Danna alleges that she was "subject to hostile and disparate terms and conditions of employment."     *Id.* at ¶ 21.  As examples, she alleges that:

- She was advised that the position was not suitable for a mother.
- RISD representatives told her she would be living in an apartment unsuitable and unsanitary for a family.
- RISD denied her the proper paperwork that was necessary for her husband and child to accompany her to Italy and necessary to obtain appropriate visas.
- RISD changed Ms. Danna's job description and misled her about duties it wanted her to take as an uncredited photographer with RISD Media.  RISD required her to be available 24/7 with little opportunity to see her husband and her son.

- RISD allowed her male colleague Ezio Genovesi to have his children and spouse accompany him during the contract period without significant restriction.

*Id.* Based on this alleged gender-based hostility, Ms. Danna filed a complaint with RISD on December 6, 2019, and then filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in January 2020. *Id.* at ¶¶ 22-23.

In February 2020, the COVID-19 pandemic hit Italy hard. In response, RISD announced it would transition all EHP students back to Providence. Ms. Danna proposed that she "remain in Rome in order to complete her contractual duties and to assist the Program Director Ezio Genovesi with completing course requirements/duties." *Id.* at ¶ 26. Ms. Danna told RISD that "it was not possible for her to relocate to Providence due to issues regarding her health insurance, residency options, personal and family related health matters, among other issues." *Id.* Ms. Danna refused to move back to Providence; as a result, RISD ended her appointment and informed her that her study abroad visa would also be terminated. *Id.* at ¶ 33.

Shortly after RISD's decision to bring the EHP back to the Providence campus, the COVID-19 virus became prevalent in the United States, prompting RISD to close the Providence campus and make classes fully remote. *Id.* at ¶ 38. RISD offered to allow Ms. Danna to stay in Rome for a few more days, to pay her a lump sum representing the rest of her contractual stipend, and $750 for her return flight. *Id.*

3

at ¶ 40. Ms. Danna refused this offer because she did not want to sign the release RISD required in exchange for this severance.

Ms. Danna filed a six-count Complaint, claiming gender discrimination (Counts I, III and IV); whistleblower protection violation (Count II); and state law claims for breach of contract and intentional infliction of emotional distress (Counts V and VI). RISD's motion to dismiss the Complaint is now before the Court. ECF No. 21.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) tests the plausibility of the claims presented in a plaintiff's complaint. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). At this stage, "the plaintiff need not demonstrate that she is likely to prevail, but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* at 102–03 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The plausibility inquiry necessitates a two-step pavane." *García-Catalán*, 734 F.3d at 103. "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st

Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

## III.   DISCUSSION

Ms. Danna's claims center on her allegations that RISD discriminated against her because she is a woman before the pandemic and that RISD used the pandemic as an excuse to terminate her in retaliation for her pursuing her discrimination claims against it. She also alleges that RISD breached its contract with her when it insisted that she return from Rome and finish her work in Providence.

### A.   GENDER DISCRIMINATION

Ms. Danna alleges that RISD discriminated against her based on her gender by creating and sustaining a hostile work environment, treating her differently than her male counterparts, and retaliating against her after she filed a discrimination claim.[1] The Court will consider each of these claims in turn.

#### 1.   Hostile Work Environment

---

[1] Ms. Danna brings her gender discrimination claims under (1) the Rhode Island Civil Rights Act of 1990, R.I.G.L. § 42-112-1; (2) the Rhode Island Whistleblowers' Protection Act, R.I.G.L. § 28-50-1; (3) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; and (4) Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681. Because the standards that apply to each statute are the same, the Court will deal with them collectively.

> For a plaintiff to succeed in a hostile work environment claim she must show:
>
> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–89 (1998)).

Ms. Danna, as a woman, is a member of a protected class. The dispute before the Court now is whether she has met her pleading burden to plausibly allege the remaining elements. To support each of these factors, Ms. Danna alleges that "upon learning that [she] had a child and husband, RISD attempted to dissuade her from taking the position, by treating her in a hostile manner." ECF No. 20 at ¶ 20. She then alleges that people at RISD subjected her to "bullying from the time she accepted the job and informed [RISD] that she had a family. . . [and that RISD] changed her job description to her detriment." *Id.* at ¶ 45.

The Court agrees that Ms. Danna's allegations that she was treated in a hostile manner because she was a mother can meet the second and third required elements showing sexual harassment based on sex. But the Complaint contains no plausible allegations to support the fourth factor, that "the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment." *O'Rourke*, 235 F.3d at 728. "[T]he pleading standard Rule 8 announces does not require 'detailed

factual allegations,' but it demands more than an unadorned, the·defendant· unlawfully·harmed·me accusation." *Twombley*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). While Ms. Danna has pleaded that RISD "bullied" her to not take the job in Rome, she does not provide any more plausible allegations undergirding this accusation that RISD harassed her.

Furthermore, RISD's attempt to persuade Ms. Danna that her job that required her to live with students in the Cenci in a single room was not conducive to her bringing her husband and child with her[2] cannot be found to support a claim of severe or pervasive gender harassment. First, an isolated incidence of RISD raising the limitations of Ms. Danna's accommodations to her and noting that they may not be appropriate for a family of three cannot be considered either severe or pervasive. Second, as her employer who undertook by contract to provide Ms. Danna workspace and housing in a foreign country, it was proper for RISD to try to dissuade her using factual information about the limitations of her living situation in Rome from bringing her family with her. Communicating this factual scenario to Ms. Danna does not qualify as severe or pervasive harassment based on her gender, but merely seeks to ensure the contract RISD entered with her would be enforceable. Therefore, the Court finds that Ms. Danna has failed to allege a plausible claim for hostile work environment gender discrimination.

---

[2] Ms. Danna did not inform RISD that she intended to bring her child and husband with her before she signed the contract.

7

## 2. Disparate Treatment

Ms. Danna also claims that RISD discriminated against her by treating her adversely and differently to comparable men based on her gender. To prove a disparate treatment claim, Ms. Danna must show that she experienced an adverse employment action based on her gender. *See Morales-Cruz*, 676 F.3d at 224.

As evidence that RISD discriminated against her based on gender, Ms. Danna points to the fact that RISD terminated her employment when she did not return to the United States but allowed the program director, a male, to stay in Rome. But when the Court evaluates the evidence, it finds that Ms. Danna's position and the program director positions are not comparable. "Distinctions as to an employee's position . . . are proper factors in determining that a plaintiff and a proposed comparator are not similarly situated." *Daumont-Colón v. Cooperativa de Ahorro y Crédito de Caguas*, 982 F.3d 20, 29 (1st Cir. 2020) (holding that employee who did not hold a senior position was not similarly situated to plaintiff who held a senior role). The program director was the chief executive of the EHP. Ms. Danna was a subordinate whose job was to support the EHP Director. Looking to the Complaint, the Court finds that there are no plausible allegations that the EHP Director and Ms. Danna were comparators. Therefore, Ms. Danna has failed to allege a plausible claim for gender discrimination through disparate treatment.

## 3. Retaliation

To plead a prima facie case of retaliation, Ms. Danna must plausibly allege: "'(1) she engaged in protected conduct; (2) she was subjected to an adverse

8

employment action; and (3) the adverse employment action is causally linked to the protected conduct.'" *Theidon v. Harvard Univ.*, 948 F.3d 477, 505 (1st Cir. 2020) (quoting *Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 94 (1st Cir. 2018)). As for causation, she must show that RISD's "desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013).

In her Complaint, Ms. Danna touched on some elements of a retaliation claim. She filed a complaint with RISD in December, and then filed a Charge of Discrimination with the Equal Employment Opportunity Commission in January. ECF No. 20 at ¶¶ 22-23. She alleges RISD subjected her to an adverse employment action – it ended her employment contract. *Id.* at ¶ 34. She alleges retaliation for filing a complaint with RISD and the EEOC. *Id.* at ¶ 24. Finally, she alleges "but for" causation. *Id.* at ¶¶ 68, 71, 78, 84.

The problem with these allegations is that they are not factually based but are legal conclusions merely recounting the elements of her retaliation claim. The court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz*, 676 F.3d at 224. The Complaint's bald assertions that but for RISD's intent to retaliate against her, it would not have retaliated against her, *see* ECF No. 20 at ¶¶ 68, 71, 78, 84, are exactly the types of conclusory statements that the Court need not credit at the Rule 12(b)(6) stage. Similarly, the assertion that "[i]n retaliation for filing her letter of complaint to RISD . . . and the EEOC Charge of Discrimination . . . Plaintiff

was retaliated against" (*Id.* at ¶ 24) is a stark legal conclusion without support for the Court to evaluate its plausibility. *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80–81 (1st Cir. 2013) (". . . that conclusory statement is presented as an ipse dixit, unadorned by any factual assertions that might lend it plausibility. So viewed, the complaint stumbles on the plausibility threshold."). Therefore, the Court finds that Ms. Danna's allegations in support of her retaliation claim are not sufficiently pled to meet the plausibility standard. Her retaliation claim is dismissed.

Because the Court has determined that Ms. Danna has failed to plausibly allege claims for gender discrimination, it DISMISSES Counts I, II, III, and IV.

B.    **STATE LAW CLAIMS**

Ms. Danna also brings claims against RISD under Rhode Island law. The Court will now turn to consider those claims.

### 1. Whistle Blower Claims

Ms. Danna also makes a claim under the Rhode Island Whistle Blower Protection Act, R.I. Gen. Laws 28-50-3 ("RIWPA"). That statute provides protection when "the employee, . . . reports or is about to report to a public body, verbally or in writing, a violation that the employee knows or reasonably believes has occurred or is about to occur, of a law or regulation or rule promulgated under the law of this state, a political subdivision of this state, or the United States." But without a causal link between the alleged whistleblowing and an adverse job action, the claim fails as a matter of law. *See Malone v. Lockheed Martin Corp.*, 610 F.3d 16, 23-24 (1st Cir. 2010). Here, just as in the federal retaliation claim above, Ms. Danna has failed to

10

plausibly plead causation, i.e., that her report to the EEOC caused RISD to terminate her employment contract. As such, her RIWPA claim fails as pled and is DISMISSED.

### 2. Breach of Contract

Ms. Danna alleges in Count V of her Complaint that she had a contract with RISD, and that RISD breached the contract "by unilaterally depriving [her] of the terms and benefit of the contract . . . by evict[ing her] from her contractually required residence, eliminat[ing] her insurance coverage, [taking] steps to cause the elimination of her work visa, and stop[ping] paying her the renumeration under the contract." ECF No. 20 at ¶ 89. RISD counters that it did not breach the contract, but it could not fulfill its terms due to the conditions brought upon by the pandemic.

To prevail in a breach of contract claim, "a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." *Barkan v. Dunkin' Donuts, Inc.*, 627 F.3d 34, 39 (1st Cir. 2009) (citing *Petrarca v. Fid. & Cas. Ins. Co.*, 884 A.2d 406, 410 (R.I. 2005)). "To establish causation, the plaintiff must prove that the defendant's breach was the 'but for' cause of the alleged damages." *Id.* at 40 (citing *Wells v. Uvex Winter Optical, Inc.*, 635 A.2d 1188, 1191 (R.I. 1994)).

RISD does not dispute that an agreement existed between the parties. The contract is straightforward: in exchange for a stipend of $17,200, airfare, expenses, housing, and insurance from RISD, Ms. Danna agreed to live in the Palazetto Cenci from August 20, 2019, through June 30, 2020, and to perform six specific duties for

her full·time course of study.  ECF No. 20·1.  Ms. Danna has plausibly alleged that she performed all the contractual requirements on her part, and that RISD did not fulfill its promise of full payment and year·long housing.  RISD's arguments about the pandemic, the return to the states, and the in·person versus on·line aspects of the program, are all matters not appropriate for consideration in the context of the Motion to Dismiss.  The Court finds that Ms. Danna has plausibly alleged a breach of contract claim seeking damages for her losses under the contract.  RISD's motion to dismiss this claim is DENIED.

### 3.  Intentional Infliction of Emotional Distress

To maintain an action for intentional infliction of emotional distress under Rhode Island law, a plaintiff must establish these elements: "(1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe." *Champlin v. Washington Tr. Co. of Westerly*, 478 A.2d 985, 989 (R.I. 1984).  Whether a defendant's actions are sufficiently "extreme and outrageous" to meet the threshold for imposing liability is a question of law for the court. *Clift v. Narragansett Television, L.P.*, 688 A.2d 805, 813 (R.I. 1996).

To define the degree of "extreme and outrageous" conduct that constitutes the tort of intentional infliction of emotional distress, sometimes called the "tort of outrage," *see Vallinoto v. DiSandro*, 688 A.2d 830, 839 (R.I. 1997), the Rhode Island

12

Supreme Court adopted the standard in the Restatement (Second) Torts § 46 (1965). *Hoffman v. Davenport-Metcalf,* 851 A.2d 1083, 1089 (R.I. 2004). Liability may lie only where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 1090 (citations omitted). Described as a very high standard, "it is not enough that the defendant acted with an intent which is tortious or even criminal, or that [the defendant] has intended to inflict emotional distress[.]" *Id.* at 1089.

In her Complaint, Ms. Danna alleges that RISD "essentially abandon[ed] [her] in Rome, attempt[ed] to evict [her], depriv[ed] [her] of sustainable income, her work visa, and suitable housing, [RISD] acted intentionally, recklessly and/or with deliberate indifference to a substantial probability that severe emotional distress would result to [her]." ECF No. 20 at ¶ 93. As the determination of whether the conduct is extreme and outrageous is for the Court, it finds that these allegations contain sufficient factual details and cover the essential elements of an intentional infliction of emotional distress claim under Rhode Island law, and therefore RISD's Motion to Dismiss Count VI is DENIED.

## IV.   CONCLUSION

The Court GRANTS IN PART AND DENIES IN PART RISD's Motion to Dismiss. ECF No. 21. The Court GRANTS RISD's Motion to Dismiss Counts I, II, III, and IV and DENIES RISD's Motion to Dismiss Counts V and VI.

IT IS SO ORDERED:

John J. McConnell, Jr.
Chief United States District Judge

May 16, 2022

14